FINAL COPY
294 Ga. 589

S13A1904.  WARREN v. THE STATE.

THOMPSON, Chief Justice.

Appellant Charles Warren was indicted for violating OCGA § 16-12-81, with the indictment alleging that he sent an unsolicited text message containing an image of his genitalia to an adult female without notifying her that the message contained nudity.  Appellant filed a general demurrer, arguing that OCGA § 16-12-81 does not criminalize his conduct, and three motions to quash the indictment, raising various constitutional challenges to the statute.  The trial court denied appellant's demurrer and his motions to quash, and he now appeals.  Appellant is correct that OCGA § 16-12-81 does not criminalize his conduct.  The trial court therefore erred in denying his general demurrer.   Because the indictment must be dismissed for this reason, we need not address appellant's constitutional challenges to the statute.

Appellant contends that the trial court erred in denying his general demurrer to the indictment, because the act alleged in the indictment --- the sending of a nude image of his genitals from his cell phone to the victim's cell

phone --- is not prohibited by OCGA § 16-12-81. We agree.

"When analyzing a general demurrer, the question is whether a defendant can admit to the conduct and still be innocent of the crime." Dorsey v. State, 279 Ga. 534, 538 (615 SE2d 512) (2005). OCGA § 16-12-81 (a), which was enacted in 1970, see Ga. L. 1970, p. 173, provides:

> (a) A person commits the offense of distributing material depicting nudity or sexual conduct when he sends unsolicited through the mail or otherwise unsolicited causes to be delivered material depicting nudity or sexual conduct to any person or residence or office unless there is imprinted upon the envelope or container of such material in not less than eight-point boldface type the following notice:
>
> > "Notice – The material contained herein depicts nudity or sexual conduct. If the viewing of such material could be offensive to the addressee, this container should not be opened but returned to the sender."[1]

---

[1]Subsection (b) of OCGA § 16-12-81 says:
> (b) As used within this Code section, the term:
>    (1) "Nudity" means the showing of the human male or female genitals, pubic area, or buttocks with less than a full opaque covering or the depiction of covered male genitals in a discernibly turgid state.
>    (2) "Sexual conduct" means acts of masturbation, homosexuality, sodomy, sexual intercourse, or physical contact with a person's clothed or unclothed genitals, pubic area, buttocks, or, if the person is female, breast.

2

To start, we note that OCGA § 16-12-81 is not inapplicable to electronic text messaging merely because that form of communication did not exist when OCGA § 16-12-81 was enacted in 1970. See Collins v. Mills, 198 Ga. 18, 22 (30 SE2d 866) (1944) (holding that a "provision of the constitution is to be construed in the sense in which it was understood by the framers and the people at the time of its adoption," but that if new products or circumstances that did not exist at the time the constitutional provision was enacted fall within the meaning of the provision, the constitutional provision applies to them). Because the words of OCGA § 16-12-81 at issue here are not "words of art or words connected with a particular trade or subject matter," we look to the ordinary meaning of those words at the time the General Assembly enacted the statute in deciding whether the sending of an intangible text message comes within the scope of the statute. See OCGA § 1-3-1 (b) ("In all interpretations of statutes, the ordinary signification shall be applied to all words, except words of art or words connected with a particular trade or subject matter, which shall have the signification attached to them by experts in such trade or with reference to such subject matter."); Collins, 198 Ga. at 22. See also Sandifer v. U. S. Steel Corp., ___ U. S. ___, ___ (134 SCt 870, 187 LE2d 729, 738) (2014) (holding that,

3

"'unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning'" at the time Congress enacted a statute and reviewing dictionaries from the era of the statute's enactment to assist in determining its meaning (citation omitted)). Moreover, under the canon of noscitur a sociis, the words in OCGA § 16-12-81 (a) should be understood in relation to each other, since "'[w]ords, like people, are judged by the company they keep.'" Hill v. Owens, 292 Ga. 380, 383 (738 SE2d 56) (2013).

The statute contains a specific prohibition against sending unsolicited through the mail material depicting nudity or sexual conduct without the required notice, followed by a more general prohibition against "otherwise unsolicited caus[ing] to be delivered material depicting nudity or sexual conduct to [a] person" without the statutory notice. The specific prohibition is clearly aimed at tangible material that is delivered in a tangible manner, see Webster's Third New International Dictionary 1361 (1966) (defining "mail" as "the bags of letters and the other postal matter conveyed under public authority from one post office to another"), and because appellant did not send anything through the mail, he did not violate this prohibition. The question is whether, as the State

4

argues, appellant violated the general prohibition.[2]

Considering the general prohibition in relation to the other words of the statute, we conclude that the general prohibition is limited in the same manner as the specific. The notice provision of the statute says that the notice "must be imprinted on the envelope or container of such material." "Such material" clearly refers to the "material depicting nudity or sexual conduct" described in the specific and general prohibitions of the statute. Thus, the statute contemplates that the "material" that is the subject of both prohibitions has an envelope or container that can have the notice imprinted on it. At the time OCGA § 16-12-81 was enacted, an "envelope" was defined as "something that envelopes: wrapper, container, receptacle" and as "a flat flexible usu[ally] paper

---

[2] The canon of ejusdem generis is unhelpful in this case. Under it, when a statute lists "by name several particular things, and concludes with a general term of enlargement, this latter term is to be construed as being ejusdem generis (i.e., of the same kind or class) with the things specifically named, unless, of course, there is something to show that a wider sense was intended." Center for a Sustainable Coast v. Coastal Marshlands Protection Comm., 284 Ga. 736, 737-738 (670 SE2d 429) (2008) (citations and punctuation omitted). Here, however, because there is only one specific prohibition, followed by a general prohibition, and not "a list of specific items separated by commas and followed by a general or collective term," the canon is inapplicable. See Ali v. Fed. Bureau of Prisons, 552 U. S. 214, 224-225 (128 SCt 831, 169 LE2d 680) (2008).

container in many sizes and constructions made by die cutting and gluing with an overlapped back seam and with bottom and closure flaps both adhering to the back portion," Webster's Third New International Dictionary 759 (1966), and a "container" was defined as "one that contains: as . . . a receptacle (as a box or jar) or a formed or flexible covering for the packing or shipment of articles, goods, or commodities." Id. at 491. In addition, "imprint" meant "to mark by pressure (as a figure on an object or as the object itself with the figure)." Id. at 1137. Given their ordinary meaning, these words indicate that the general prohibition of OCGA § 16-12-81, like the specific prohibition, addresses tangible material that has a tangible envelope or container on which the required notice can be imprinted.[3] This conclusion is reinforced by the fact that the imprinted notice on the envelope or container must be in "eight-point boldface type" and must say that the "container" should be "returned" to the sender if the addressee does not want to "open" it. We thus conclude that the general prohibition of the statute does not apply to the text message that appellant sent

---

[3] We note that the parties stipulated that "[a]n electronic text message does not have an envelope or an 'outside container' within the meaning of OCGA § 16-12-81."

6

in this case. The trial court therefore erred in denying appellant's general demurrer to the indictment.[4]

Finally, to the extent that it can be argued that after applying the traditional canons of statutory construction, it is unclear whether the statute applies to appellant's conduct, the rule of lenity would require us to give him the benefit of the doubt. See Harris v. State, 286 Ga. 245, 253 (686 SE2d 777) (2009).

Judgment reversed. Hines, P. J., Benham, Hunstein, Nahmias, Blackwell, JJ., and Judge Elizabeth L. Branch concur. Melton, J., not participating.

---

[4] Hawkins v. State, 290 Ga. 785, 786 (723 SE2d 924) (2012), is distinguishable. There, we held that, for purposes of a search incident to arrest, "a cell phone is 'roughly analogous' . . . to a traditional container that can be opened to search for tangible objects of evidence," in that, under certain circumstances, there can be probable cause to believe that the object of a search can be found inside a cell phone, as with a traditional container. See id. at 787. Here, however, we are not dealing with the rationale of searches incident to arrest but with the language of OCGA § 16-12-81, and the analogy of Hawkins is inapplicable.

Decided February 24, 2014.

OCGA § 16-12-81. Cherokee Superior Court. Before Judge Cannon.

Bowers & Roch, Thomas J. Bowers III, Donald R. Roch II, for appellant.

Shannon G. Wallace, District Attorney, Cliff Head, Patricia G. Hull, Assistant District Attorneys, Samuel S. Olens, Attorney General, Nels S. D. Peterson, Solicitor-General, for appellee.