**THIRD DIVISION**
**DOYLE, P. J.,**
**MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely**
**filed.**
          **https://www.gaappeals.us/rules**

**March 12, 2026**

# In the Court of Appeals of Georgia

A25A1689. THE APPEAL, INC. v. OLIVER et al.

DOYLE, Presiding Judge.

The Appeal, Inc. ("TAI"), a California-based, non-profit news organization, filed a civil complaint against Tyrone Oliver, Commissioner of the Georgia Department of Corrections ("DOC"); Shawn Emmons, Warden of the Georgia Diagnostic and Classification Prison ("GDCP"); and Christopher Carr, Attorney General of the State of Georgia, (collectively, "the Appellees"). The complaint alleged that certain portions of the DOC's lethal injection procedures — specifically, those portions that restrict full auditory and visual media access to the entire execution process, including the preparation of the lethal injection itself and the preparation of the condemned to receive that injection — violate Ga. Const. of 1983,

Art. I, Sec. I, Par. V (free speech and press) and Ga. Const. of 1983, Art. I, Sec. I, Par. XI (public trial). TAI appeals from the trial court's order granting the Appellees' motion to dismiss,[1] arguing that the trial court erred because (1) the public has a constitutional right of access to executions in Georgia; and (2) the trial court misapplied the legal standard for granting a motion to dismiss. Because TAI lacks standing to pursue these claims, we affirm.

To the extent this appeal presents questions of law, it is subject to de novo review. See *Gonzalez v. Miller*, 320 Ga. 170, 170(1) (907 SE2d 859) (2024). Additionally, "'a trial court's ruling on a motion to dismiss for failure to state a claim for which relief may be granted is reviewed de novo[.]'" Id. While we view as true all well-pleaded material allegations in the complaint, "we are under no obligation to adopt a party's legal conclusions based on these facts." *Auto-Owners Ins. Co. v. Tracy*, 344 Ga. App. 53, 54 (806 SE2d 653) (2017) (citation and punctuation omitted).

So viewed, the record reflects that the Appellees perform executions at the GDCP in a series of connected rooms. The DOC has developed a set of procedures

---

[1] TAI initially filed this appeal in our Supreme Court, which transferred the case to us after it determined that the questions on appeal "require the mere application of well-settled constitutional principles to the facts of [the] case, [and] the appeal fails to invoke [the Supreme] Court's appellate jurisdiction over constitutional questions." See *The Appeal, Inc., v. Oliver*, Case No. S25A0654 (Mar. 31, 2025) (order).

("the Procedures") governing the performance of executions, which are done by lethal injection. Under the Procedures, two hours before an execution, a prison official delivers the lethal injection chemicals to the chemical room, which adjoins the execution chamber. Designated personnel perform a preliminary evaluation of the execution equipment and instruments, as well as the telephone circuits and other lines of communication. The Warden then directs an inspection of the execution chamber and witness room, which adjoins the execution chamber and is separated by a glass window through which witnesses can see and hear into the chamber. In the hour before the execution, a second equipment and communications check is performed, and other designated staff prepare the lethal injection syringes, test the heart monitor, and ensure that the straps of the execution gurney are in place and functional.

Under the Procedures, no media witness has access to the preparatory steps performed during the two hours preceding an execution, but the DOC permits as many as five media witnesses from designated media outlets to attend the execution itself. The Associated Press may send one representative, and the Georgia Association of Broadcasters and Georgia Press Association may each send two representatives.[2] A single media monitor is selected from this group who is typically a reporter from the

---

[2] The Procedures do not include TAI as a designated media outlet.

county of conviction.

Twenty minutes prior to the execution, the media monitor is granted access to the witness room to observe the final preparatory steps in the execution chamber, during which the condemned is brought into the execution chamber and secured to the gurney. Thereafter, the condemned is connected to a heart monitor and intravenous lines. At this point, the other media witnesses are allowed into the witness room. Once the witnesses are in place, a microphone in the execution chamber is turned on to allow those in the witness room to hear the condemned give a final statement and the Warden read the execution order. The microphone is then turned back off.

Administration of the lethal injection chemicals then begins. From the chemical room, which is hidden from the media witnesses, a series of saline and phenobarbital injections is transmitted into the body of the condemned through tubes that pass through the wall between the chemical room and execution chamber. If the condemned still exhibits signs of life after the initial dose of phenobarbital is administered, the Warden will order the administration of additional phenobarbital. When the condemned no longer exhibits signs of life, the Warden and two physicians enter the execution chamber to confirm the death of the condemned. After the death

of the condemned is confirmed, the microphone in the execution chamber is turned back on to allow those in the witness room to hear the Warden announce the fact of the condemned's death. A curtain is then drawn over the window between the execution room and witness room, and the witnesses are escorted out of the prison.

TAI reports on executions in Georgia and, in so doing, relies on the accounts of the media witnesses who attend these executions. In March 2024, TAI sued the Appellees, claiming that the Procedures' limitations on media witnesses violates the Georgia Constitution's free speech and public trial provisions.[3] See Ga. Const. of 1983, Art. I, Sec. I, Pars. V, XI. According to TAI, these provisions require that the designated media witnesses have complete "visual or auditory access to the preparatory steps for executions." This would include granting the designated media witnesses full visual and auditory access to the chemical room for the two hours preceding an execution. This would also include allowing all the media witnesses (not just the media monitor) to enter the witness room and observe the final preparatory steps before the execution.[4] TAI also challenges the Procedures to the extent that they

---

[3] TAI initially asserted that the Procedures also violate the First Amendment of the Constitution of the United States, but it amended its complaint to withdraw this assertion after the Appellees removed the action to federal court.

[4] TAI claims that because the media monitor is "often inexperienced," he or she may not be able to provide "complete and accurate" reporting of these steps.

do not require the microphone in the execution chamber to remain on for the entirety of the execution.

In March 2024, TAI also filed an emergency motion for an interlocutory injunction and temporary restraining order to prevent an execution from taking place subject to the Procedures' current restrictions on media witnesses. The Appellees responded to the emergency motion, arguing, among other things, that TAI lacked standing to pursue its constitutional challenges to the Procedures. After a hearing, the trial court denied TAI's request for an interlocutory injunction and temporary restraining order but ruled that TAI had standing to pursue its challenges to the Procedures.

Thereafter, the Appellees moved to dismiss TAI's complaint for failure to state a claim for which relief could be granted, arguing that the allegations in TAI's complaint could not establish that the free speech and public trial provisions of the Georgia Constitution provide the media with a right of access to the entirety of the execution process. After a hearing, the trial court granted the Appellees' motion to dismiss, noting that as to TAI's free speech claim, "Georgia courts have not ... recognized a constitutional right of access to execution proceedings[.]" As to TAI's public trial claim, the trial court reasoned that because an execution is not part of a

trial, TAI's complaint also failed to state a claim for relief under the public trial provision of the Georgia Constitution. This appeal followed.

TAI contends that it has standing to pursue its constitutional challenges to the Procedures because (1) they violate TAI's private rights to receive information, to speak and publish freely, and to access government proceedings; (2) they violate TAI's public right to access executions; and (3) TAI has organizational standing. We disagree.

> Under the Judicial Power Paragraph of the Georgia Constitution, see Ga. Const. of 1983, Art. VI, Sec. I, Par. I, Georgia courts have the power to resolve only genuine controversies. For a genuine controversy to exist, and thereby invoke the State's judicial power, a plaintiff must have standing to sue. This is a jurisdictional requirement, mandating that a plaintiff show that he has a legal right at stake that requires adjudication to protect it. As the party seeking to invoke the jurisdiction of a Georgia court, the plaintiff has the burden of establishing standing. A plaintiff must assert the violation of his *own* rights and cannot merely vindicate the rights of another. Standing must be established as to each claim of relief sought.

*Republican Nat'l Comm. v. Eternal Vigilance Action, Inc.*, 321 Ga. 771, 775 (2) (917 SE2d 125) (2025) (citations and punctuation omitted; emphasis in original).

"Standing focuses on the party seeking relief and not on the issues the party wishes to have adjudicated, and it is the person wishing to invoke a court's jurisdiction

7

who must have standing." *Atl. Specialty Ins. Co. v. Lewis*, 341 Ga. App. 838, 845(1)(c) (802 SE2d 844) (2017) (punctuation omitted). "Finally, 'when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily substantially more difficult to establish.'" *Ctr. for a Sustainable Coast, Inc. v. Turner*, 324 Ga. App. 762, 765 (751 SE2d 555) (2013) (citing *Summers v. Earth Island Inst.*, 555 US 488, 493-94(II) (2009) (punctuation omitted)).

1. Although TAI argues in its supplemental briefing that it is asserting its own private rights in challenging the Procedures, our review of the complaint demonstrates that TAI's only claim under the free speech provision of the Georgia Constitution is that the current incarnation of the Procedures allegedly violates the rights of the media witnesses "to see and hear the entire execution process." In its complaint, TAI never alleges that the Procedures violate its own legal rights specifically. See *Wasserman v. Franklin County*, 320 Ga. 624, 644(II)(A)(2) (911 SE2d 583) (2025) ("[A] plaintiff must assert her own legal rights to have a Georgia court resolve a dispute about the relative rights of the parties to an action, and we have consistently rejected plaintiffs' attempts to have our courts adjudicate the rights of (and much less bind) parties not before the court.").

TAI's complaint alleges that by preventing the media witnesses from seeing and

8

hearing the entire execution, the Procedures prevent TAI from "accurately knowing and understanding what occurs during a State execution" and from having "accurate and complete information about executions[.]" While this may be a collateral consequence of the Procedures' limitations on the media witnesses' access to executions, "a plaintiff cannot establish standing by asserting merely factual harm or damage." Id. at 629(II)(A). TAI's desire to have other members of the media enjoy unrestricted access to the entirety of the execution process, so that these entities can then supply observations and information based on this access for TAI's later downstream use, does not constitute a separately alleged injury to TAI's own legal rights.

In this connection, TAI's reliance on *WXIA-TV v. State of Ga.*, 303 Ga. 428 (811 SE2d 378) (2018) is misplaced. In *WXIA-TV*, the Supreme Court of Georgia held that certain news organizations had standing to challenge the constitutionality of gag orders applicable to third parties. See id. at 432-33(2). Significantly, in reaching this holding, the Court surveyed federal decisions holding that "a news organization may have standing to challenge a restraint upon the *speech* of another when that restraint impairs its own ability to effectively engage in news gathering." Id. at 432(2) (emphasis added). Here, by contrast, the Procedures at issue are not a prior restraint

9

on the speech of the media witnesses; they merely limit the observations of these witnesses during executions, after which the witnesses are free to say anything they wish about the process. Thus, *WXIA-TV* is inapposite.

Similarly, TAI argues that the Procedures' media-access restrictions directly impair its right to freely speak, write, and publish its sentiments about executions in Georgia, citing Ga. Const. Art. I, Sec. I, Par. V ("No law shall be passed to curtail or restrain the freedom of speech or of the press."). But this argument is conclusory and belied by TAI's own allegations, which critique the execution process in Georgia with painstaking thoroughness and specificity. In any event, the Procedures' restrictions on what the media witnesses are allowed to observe during an execution do not prevent TAI (or anyone else, for that matter) from freely expressing and publishing their views on what occurs during an execution, including those aspects not observed by media witnesses.

TAI also argues that the Procedures violate its constitutional right to access executions. This argument fails. As noted above, TAI's complaint does not allege that TAI itself has the right to physically attend executions in Georgia. Nor does TAI cite any authority for the proposition that it has such a right. Accordingly, TAI has not demonstrated standing to challenge the Procedures on the basis of their alleged

violations of TAI's private legal rights.

2. TAI also contends that it has standing to challenge the Procedures based on its assertion of the public's constitutional right to access executions. This contention fails. We first note that the plain text of both the free speech and public trial provisions of the Georgia Constitution refer only to the private rights of individuals. See Ga. Const. of 1983, Art. I, Sec. I, Par. V ("Every *person* may speak, write, and publish sentiments on all subjects[.]") (emphasis added); Ga. Const. of 1983, Art. I, Sec. I, Par. XI ("In criminal cases, the *defendant* shall have a public and speedy trial by an impartial jury[.]") (emphasis added). "Private rights [are] those belonging to an individual as an individual." *Sons of Confederate Veterans v. Henry County Bd. of Comm'rs*, 315 Ga. 39, 47(2)(a) (880 SE2d 168) (2022). "In contrast to private rights, public rights have been described as those rights that are shared by 'the whole community, considered as a community, in its social aggregate capacity.'" *Wasserman*, 320 Ga. at 634(II)(A)(1)(a)(ii).

Moreover, the allegations of TAI's complaint do not establish that the public at large has a constitutional right of access to executions in Georgia. Nor does TAI cite any authority in support of this proposition. Indeed, TAI's briefing concedes that the public's access to executions depends on the access of the media witnesses: "When

media witnesses are denied access, Plaintiff and other news organizations are unable to accurately and entirely report on Georgia executions, and the public is, in turn, stripped of its right to access these critical government proceedings." TAI's argument that it has standing based on the rights of the public is ultimately flawed in the same way as are its arguments for standing based on its own alleged private rights — TAI is not asserting its own rights; it is attempting to assert the rights of third-party media witnesses. "[A] plaintiff may not maintain an action in Georgia courts by asserting only the rights of a third party[.] Instead, at a minimum, a plaintiff must assert her own rights to maintain an action in Georgia courts." *Wasserman*, 320 Ga. at 649(II)(B)(2). Accordingly, TAI does not have standing to pursue its constitutional challenges to the Procedures on this ground.

3. Finally, TAI contends that it has organizational standing to challenge the constitutionality of the Procedures. We disagree.

"Organizational standing ... permits an organization to sue in its own right if it meets the same standing test applicable to individuals." *Black Voters Matter Fund, Inc. v. Kemp*, 313 Ga. 375, 381-82(1)(a) (870 SE2d 430) (2022) (overruled on other grounds by *Republican Nat'l Comm.*, 321 Ga. at 780(2)(b)).

TAI is a California-based nonprofit news organization. It is not included among

the designated media outlets that are permitted to send media witnesses to observe executions in Georgia. The fact that TAI's mission includes reporting on criminal justice issues, including executions in Georgia, does not give it direct organizational standing to challenge the Procedures, as if it were a designated media outlet. See *Black Voters Matter Fund, Inc.*, 313 Ga. at 382-83(1)(a) ("[T]he fact that BVMF's corporate mission includes an interest in advocating for the rights of Georgia voters by engaging in litigation does not, in and of itself, give it direct standing to challenge SB 9, as if it were a voter.")

Moreover, the doctrine of organizational standing does not exempt TAI from "[t]he requirement that a plaintiff must assert a violation of her rights to maintain an action in Georgia courts … [which] is the bedrock requirement for invoking the judicial power granted by the Georgia Constitution." *Wasserman*, 320 Ga. at 640(II)(A)(2). As with its other assertions regarding standing, TAI's argument for organizational standing depends on the flawed premise that it may assert the rights of third-party media witnesses or third-party media outlets. Accordingly, TAI does not have standing to challenge the constitutionality of the Procedures on this ground.

Because TAI lacks standing to pursue its constitutional challenges to the Procedures, we affirm the trial court's dismissal of TAI's complaint, albeit for reasons

not relied upon by the trial court. See *DeKalb County Republican Party, Inc. v. Raffensperger*, 376 Ga. App. 757, 769-70(2)(b)(ii) (921 SE2d 23) (2025) (holding that the plaintiff lacked standing to petition for a writ of mandamus, and affirming the trial court's order dismissing the petition based upon principles not relied upon by the trial court because "a judgment right for any reason will be affirmed[.]")

*Judgment affirmed. Markle and Padgett, JJ., concur.*