319 Ga. 616
FINAL COPY

S24G0198. MILLIRON v. ANTONAKAKIS.

LAGRUA, Justice.

We granted certiorari in this case to decide two issues: first, whether the Open Records Act, OCGA § 50-18-70 et seq., applies to records held by an individual who is employed by a public agency and who also performs services for that agency as a private contractor where the records sought relate to that individual's services as a private contractor for the agency; and second, if the Open Records Act does apply to such records, whether an open records request can be sent directly to the private contractor or must instead be sent to the agency or the agency's open records officer, assuming one has been designated. For the reasons that follow, we conclude that the Open Records Act applies to such records, and while we agree with the Court of Appeals that an agency may designate an open records officer upon whom all written open records requests to the agency must be made, see OCGA § 50-18-71

(b) (1) (B),[1] we conclude that, even when such an officer has been designated by an agency, a request for public records related to a private contractor's services to a public agency can be served upon non-agency custodians of the relevant public records — including the private contractor if he or she is the custodian of the records sought — and the Court of Appeals erred in concluding otherwise. See *Milliron v. Antonakakis*, 369 Ga. App. 121, 125 (1) (891 SE2d 448) (2023). See also OCGA § 50-18-71 (b) (1) (B) ("A request made pursuant to this article may be made to the custodian of a public record orally or in writing."). We therefore reverse in part the judgment of the Court of Appeals affirming the trial court's grant of the motion to dismiss and remand the case to the Court of Appeals with direction to remand to the trial court for further proceedings.

At the center of this action is an open records request Ryan Milliron sent to Respondent Manos Antonakakis, a professor

---

[1] The pertinent portion of OCGA § 50-18-71 (b) (1) (B) provides that "[a]n agency may, but shall not be obligated to, require that all written requests be made upon . . . a duly designated open records officer of an agency."

2

employed by the Georgia Institute of Technology ("Georgia Tech"), seeking records related to Antonakakis's purported services to Georgia Tech — a public agency — as a private contractor. As summarized by the Court of Appeals, the relevant facts are as follows:

> [O]n July 10, 2022, Milliron submitted an Open Records Act request to Georgia Tech. On the same day, Milliron sent an Open Records request for the same information to Antonakakis, individually, by e-mailing Antonakakis's personal counsel. In this separate request, Milliron demanded a search of "any . . . privately held email account likely to have agency records[,]" but nonetheless acknowledged that "the appropriate course of action would be to transfer the [requested material] to Georgia Tech for processing through their Open Records staff." Antonakakis did not individually respond to Milliron's request in his personal capacity, but Georgia Tech did respond and produced documents. Unsatisfied with the documents received from Georgia Tech, Milliron filed suit against Antonakakis in his individual capacity, seeking to force him to personally respond to the Open Records request and independently produce documents directly to Milliron.

*Milliron*, 369 Ga. App. at 121-122 (1) (footnotes omitted).

In Milliron's complaint against Antonakakis, Milliron alleged that Antonakakis performed work for Georgia Tech as both an

3

employee and a private contractor, and that, in Antonakakis's capacity as a private contractor, he had possession of public records he was required to produce to Milliron under the Open Records Act. In furtherance thereof, Milliron contended that Antonakakis was the "founder and owner" of two companies, Notos Technologies, LLC, and Voreas Laboratories, Inc. (the "companies"), which were allegedly formed by Antonakakis "for the purpose of receiving funding from the federal Defense Advanced Research Projects Agency ('DARPA') to carry out work for Georgia Tech's benefit" and/or to perform other services "with, for, and on behalf of Georgia Tech." Milliron asserted that, while performing these services for Georgia Tech, Antonakakis and the companies "prepared and maintained or received records," including "documents related to Georgia Tech business," for "storage or future governmental use," and these documents were considered "public records" under the Open Records Act. Milliron further asserted that he submitted written open records requests to Georgia Tech's designated open

4

records officer and Antonakakis's personal legal counsel[2] in July 2022, seeking, among other materials, public records related to DARPA, "the Alfa bank allegations," and e-mails Antonakakis allegedly sent to or received from certain individuals using his private e-mail account that concerned business related to Georgia Tech and/or the companies.

Prior to filing an answer and before discovery commenced in this case, Antonakakis moved to dismiss Milliron's complaint for failure to state a claim under OCGA § 9-11-12 (b) (6).[3] As grounds for dismissal, Antonakakis asserted the following: (1) he was not an

---

[2] Milliron asserts in his briefing that he sent the open records request to Antonakakis's personal attorney, as opposed to Antonakakis directly, because the attorney instructed him to do so. (Referencing e-mails between Milliron and Mark E. Shamel, Esq., attached as Exhibit 1 to Milliron's Affidavit, filed in the trial court on October 6, 2022.)

[3] Antonakakis also moved for "reasonable attorney's fees and other litigation costs reasonably incurred" pursuant to OCGA § 50-18-73 (b), which provides in pertinent part that,

> [i]n any action brought to enforce the provisions of this chapter in which the court determines that either party acted without substantial justification either in not complying with this chapter or in instituting the litigation, the court shall, unless it finds that special circumstances exist, assess in favor of the complaining party reasonable attorney's fees and other litigation costs reasonably incurred.

"agency" subject to production under the Open Records Act; (2) while agency employees may individually possess public records, agency employees do not have to personally respond to public records requests; (3) agencies are the only proper party for producing public records, even when a private person possesses such records; (4) Milliron's complaint was moot because he submitted the same open records request to Georgia Tech — the "responsible state agency" — and Georgia Tech "communicated and worked with" Antonakakis to "identify, collect, and produce responsive records" in full as required under the Open Records Act; and (5) Milliron did not allege that Georgia Tech "improperly redacted or omitted any documents from that production."

In Milliron's response to Antonakakis's motion, he argued that he had received materials from outside sources related to Antonakakis's service as a private contractor for Georgia Tech, including two e-mails purportedly sent from or received into Antonakakis's personal e-mail account, which were not turned over

by Georgia Tech or Antonakakis. Milliron also filed a request for the trial court to stay any ruling on Antonakakis's motion until discovery could be conducted in this case, and in support thereof, Milliron filed his affidavit attaching, among other things, e-mail correspondence he exchanged with Antonakakis's personal attorney and documents he received from Georgia Tech in response to his open records request.

Following a hearing,[4] the trial court granted Antonakakis's motion to dismiss on November 4, 2022.[5] In dismissing the complaint, the trial court rejected any argument that a public or state employee is "directly and personally obligated to provide public records" under the Open Records Act, concluding that OCGA § 50-18-70 et seq. obligates only agencies to produce records, not individual employees of those agencies. The trial court also

_____

[4] Milliron elected not to include a transcript of this hearing in the appellate record.

[5] The trial court also held that Antonakakis was entitled to reasonable attorney fees and costs under OCGA § 50-18-73 (b) and subsequently awarded him $53,874.51 in fees without holding an evidentiary hearing on this issue.

concluded that Georgia Tech had designated "an open records officer" as "the custodian of agency records" upon whom open records requests must be made, and as such, Milliron's request directly to Antonakakis, rather than the proper designated officer, was improper. Milliron appealed the trial court's decision to the Court of Appeals.

The Court of Appeals affirmed the trial court's dismissal of Milliron's complaint, concluding that "Milliron's contention that the trial court improperly dismissed his action against Antonakakis fails because his Open Records request was not properly submitted." *Milliron*, 369 Ga. App. at 123 (1). In reaching this conclusion, the Court of Appeals explained that the Open Records Act authorizes agencies to designate an open records officer to whom record requests must be submitted and noted that "Georgia Tech ha[d] a designated Open Records officer," which was "neither Antonakakis nor his personal attorney." Id. at 124-125 (1) (citing OCGA § 50-18-71 (b) (1) (B)). The Court of Appeals determined that, because,

"under the plain terms of OCGA § 50-18-71 (b) (1) (B), Milliron's request for documents sent directly to Antonakakis was not properly submitted, [ ] the trial court correctly determined that the faulty request [was] not a viable means to support Milliron's action for an injunction" and "properly dismissed his case."[6] Id. (citing OCGA § 50-18-71 (b) (3) ("The enforcement provisions of [OCGA §§] 50-18-73 and 50-18-74 shall be available only to enforce compliance and punish noncompliance when a written request is made consistent with this subsection and shall not be available when such request is made orally.")).

We granted Milliron's petition for certiorari and asked the parties to address whether, when a private contractor performs services for a public agency, the Open Records Act applies to records held by the private contractor related to those services, and if so, whether such a request can be submitted directly to the private

---

[6] The Court of Appeals also determined that the trial court erred "by failing to hold a hearing on [Antonakakis's] attorney fees prior to entry of the award" and remanded the case "in order for the trial court to hold an evidentiary hearing on Antonakakis's fees request." Id. at 126, 128 (3).

contractor or must be submitted to the agency. See OCGA § 50-18-71 (b) (1) (B) and (2).

1. *Records held by a private contractor related to his or her services for a public agency are subject to the Open Records Act.*

When we are presented with questions of statutory construction, "we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would." *Smith v. Northside Hosp.*, 302 Ga. 517, 521 (1) (807 SE2d 909) (2017) (quoting *Deal v. Coleman*, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013)). "[A]s we have said many times before when interpreting legal text, we do not read words in isolation, but rather in . . . the context of the [statute] as a whole." *Camp v. Williams*, 314 Ga. 699, 703 (2) (b) (879 SE2d 88) (2022) (citation and punctuation omitted).

In enacting the Open Records Act, the General Assembly declared that

> the strong public policy of this state is in favor of open government; that open government is essential to a free, open, and democratic society; and that public access to public records should be encouraged to foster confidence in government and so that the public can evaluate the expenditure of public funds and the efficient and proper functioning of its institutions.

OCGA § 50-18-70 (a). The General Assembly further stated that "there is a strong presumption that public records should be made available for public inspection without delay," and that "[t]his article shall be broadly construed to allow the inspection of governmental records." Id.

Within this framework, the General Assembly established that, with a few exceptions, "[a]ll public records shall be open for personal inspection and copying," OCGA § 50-18-71 (a), and will include

> all documents, papers, letters, maps, books, tapes, photographs, computer based or generated information, data, data fields, or similar material prepared and maintained or received by an agency or by a private

person or entity in the performance of a service or function for or on behalf of an agency or when such documents have been transferred to a private person or entity by an agency for storage or future governmental use.

OCGA § 50-18-70 (b) (2). See also *Smith*, 302 Ga. at 521 (1). The Open Records Act uses the definition of "agency" provided in the Open Meetings Act, which defines the term as "[e]very state department, agency, board, bureau, office, commission, public corporation, and authority," among other definitions. OCGA § 50-14-1 (a) (1) (A). See also OCGA § 50-18-70 (b) (1).

As the plain language of the statute makes clear, records prepared or maintained by a private contractor "in the performance of a service or function for or on behalf of an agency" are "public records" under the Act, and this is so even if the private contractor separately works as an employee of an agency. OCGA § 50-18-70 (b) (2). See also *Smith*, 302 Ga. at 521-522 (1) (explaining that, if records are "prepared and maintained or received by" a private person or entity "in the performance of a service or function for or on behalf of"

12

an agency, they are "public records" subject to the Act) (citation and punctuation omitted). On this much, the parties agree.

The trial court, however, concluded that the records Milliron sought directly from Antonakakis were *not* subject to the Open Records Act — a ruling which the Court of Appeals did not address and essentially pretermitted on appeal. See *Milliron*, 369 Ga. App. at 125 (1) n.7. And the trial court apparently reached this conclusion, in part, by rejecting Milliron's allegation that, in addition to being an employee of Georgia Tech, Antonakakis also performed services for Georgia Tech as a private contractor. We granted certiorari on this issue because it is a preliminary question that must be decided before turning to the question of to whom requests may be made under the Open Records Act.

First, to the extent the trial court determined that Antonakakis worked for Georgia Tech only as an employee and not as a private contractor, the trial court erred in doing so. Milliron alleged in his complaint that Antonakakis performed services for

Georgia Tech as a private contractor, in addition to being an employee of the university, and on a motion to dismiss, the trial court must accept these factual allegations as true. See *Norman v. Xytex Corp.*, 310 Ga. 127, 128 (1) (848 SE2d 835) (2020) (in ruling on a motion to dismiss, the trial court is required to "take the allegations in the complaint as true and resolve all doubts in favor of the [plaintiff]"). And, to the extent the Court of Appeals affirmed the trial court's dismissal of Milliron's complaint on the same basis, the Court of Appeals made the same error.

Moreover, while the trial court did not explicitly address whether, if Antonakakis *were* a private contractor for Georgia Tech, the records he possessed as part of that contract would be "public records" subject to the Act, the plain language of OCGA § 50-18-70 (b) and decisional law interpreting it clearly establish that records "prepared and maintained or received" by a private contractor "in the performance of a service or function for or on behalf of an agency" are "public records" under the Act. OCGA § 50-18-70 (b) (2). See also

*Smith*, 302 Ga. at 523 (1) (holding that "[r]ecords of [a] private company related to" work the company provided to an agency pursuant to a contract with the agency "would be public records under the Act"). Accordingly, to the extent the trial court concluded otherwise, it erred in doing so. See OCGA § 50-18-70 (b) (2).

2. *A request for public records can be submitted directly to the custodian of the records, even if the custodian is a private contractor and even if the agency for which the private contractor provides services has designated an open records officer for receipt of open records requests.*

Having concluded that records "prepared and maintained or received" by a private contractor "in the performance of a service or function for or on behalf of an agency" are "public records" under the Open Records Act, OCGA § 50-18-70 (b) (2), we must now determine upon whom a request for such records can be made. As will be explained below, we conclude that, even when an agency has designated an open records officer to whom requests must be made

15

for public records within the agency's custody, an open records request can still be made to a custodian of public records outside the agency, like here to a private contractor working for an agency. See OCGA § 50-18-71 (b) (1) (B). In addition, actions seeking to "enforce compliance" with the Open Records Act can be brought against such custodians of public records. OCGA § 50-18-73 (a).

On appeal, Milliron asserts that his open records request was properly served on Antonakakis because Antonakakis is the custodian of the subject records, and the Open Records Act imposes an obligation to produce public records on every custodian of public records — including private contractors who perform services for public agencies.[7] Antonakakis counters that the obligation to produce public records lies solely with a public agency — not its individual employees or private contractors — and accordingly, requests for public records must be submitted directly to an agency. Antonakakis further asserts that because the agency in this case —

---

[7] Milliron also served an open records request on Georgia Tech's designated open records officer for records in Georgia Tech's custody.

16

Georgia Tech — has a "duly designated open records officer," OCGA § 50-18-71 (b) (1) (B), Milliron's open records request could have been served only upon that officer.

The trial court agreed with Antonakakis and concluded that, under OCGA § 50-18-71 (b) (1) (A), only agencies are obligated to produce public records in response to open records requests — a conclusion the Court of Appeals did not reject. *Milliron*, 369 Ga. App. at 122 (1). The trial court also determined that, where — as here — an agency has designated an open records officer to receive requests for public records, such requests can only be made upon that officer — not any other custodian — to be proper and "viable," and the Court of Appeals affirmed that determination on appeal. Id. at 125 (1) (citing OCGA § 50-18-71 (b) (1) (B)). The lower courts erred in reaching these conclusions because nothing in the plain language of OCGA § 50-18-71 (b) (1) (B) or any other provision of the Open Records Act dictates that only agencies — whether through a designated officer or otherwise — can receive requests for public

records and/or are obligated to produce public records or otherwise make such records available for review.

The Open Records Act provides that "[a]ll public records shall be open for personal inspection and copying," OCGA § 50-18-71 (a), and to that end, the Act clearly provides that "[a] request made pursuant to this article may be made to the *custodian* of a public record orally or in writing." OCGA § 50-18-71 (b) (1) (B) (emphasis supplied). "When, as here, statutory text is clear and unambiguous, our interpretive task begins and ends with the text itself." *Bell v. Hargrove*, 313 Ga. 30, 32 (2) (867 SE2d 101) (2021). The Act does not define the term "custodian"; however, when the statute was enacted, "custodian" was legally defined as "1. A person or institution that has charge or custody of . . . property, papers or other valuables." *Custodian*, Black's Law Dictionary (9th ed. 2009). And "custody" was defined as "1. The care and control of a thing or person for inspection, preservation, or security." *Custody*, Black's Law Dictionary (9th ed. 2009). See also *Cardinale v. Keane*, 362 Ga. App. 644, 651 (3) (869

SE2d 613) (2022) (noting that, by using the term "custody," the Open Records Act "contemplates claims against persons who have some level of control and care over the records being sought"). Additionally, around the time the statute was enacted, "custodian" was commonly defined as "one that guards and protects or maintains, *especially*: one entrusted with guarding and keeping property or records." *Custodian*, New Webster's Dictionary (2012). So, generally speaking, a "custodian" is someone who has "custody" of a record — i.e., care and control over it. See Black's Law Dictionary (9th ed. 2009). In view of these definitions, the term "custodian" found in OCGA § 50-18-71 (b) (1) (B) is expansive enough to include anyone with the requisite care and control of public records. And, as we just held, the Act contemplates that a "private person or entity" working on the agency's behalf can prepare, maintain, or receive "public records," OCGA § 50-18-70 (b) (2), and under such circumstances, that person would become the "custodian" of those records. OCGA § 50-18-71 (b) (1) (B). Notably,

19

an action "to enforce compliance with the provisions of" the Act may also be brought "against *persons or agencies having custody of records* open to the public." OCGA § 50-18-73 (a) (emphasis supplied).

Accordingly, the language of the Act contemplates and permits that a request to inspect and copy public records can be made to someone outside of an agency. This conclusion is bolstered by the fact that, in OCGA § 50-18-71 (b) (1) (B), the General Assembly used the term "custodian," as opposed to "agency," in specifying the party upon whom an open records request can be made. See id. And no other provision in the Act states that only agencies can be custodians of public records. That no such provision exists is further support for our conclusion that a private contractor could be a "custodian" to whom open record requests can be made under the Act. Id.

While Antonakakis argues that the Open Records Act places the obligation to produce public records on agencies alone — relying on the language of OCGA § 50-18-71 (b) (1) (A), which provides that

20

"[a]gencies shall produce for inspection all records responsive to a request within a reasonable amount of time not to exceed three business days of receipt of a request" — that argument is without merit. The General Assembly's imposition of a time limit for agencies to produce public records is not tantamount to a mandate that only agencies are responsible for producing such records. Again, private persons or entities may maintain records of their work on an agency's behalf, see OCGA § 50-18-70 (b) (2), and "all" public records, including those records, "shall be open" for inspection and copying. OCGA § 50-18-71 (a). If such persons or entities are "custodians," then under the plain language of the Act, a request may be made to them. OCGA § 50-18-71 (b) (1) (B).

The only express limitation the Act provides in this context is that, where the agency has designated an official or an open records officer to receive "all written requests" on the agency's behalf, a written request to that agency *must* be submitted to the designated records officer or official. OCGA § 50-18-71 (b) (1) (B) (providing that

21

"[a]n agency may, but shall not be obligated to, require that all *written* requests be made upon . . . a duly designated open records officer," among other officials or persons) (emphasis supplied). But the clear language of this provision demonstrates that it only concerns written open records requests made to an agency, seeking records that are within the *agency's* custody. It does not speak to requests to "private person[s] or entit[ies]" who prepare, maintain, or receive records of their work on behalf of agencies. OCGA § 50-18-70 (b) (2). As such, even where an agency has designated an open records officer or official for this purpose, a request for public records may still be made upon other non-agency custodians of the pertinent public records, including — potentially — private contractors who perform services for a public agency.[8] See id.

---

[8] In cases involving records related to a private contractor's services to a public agency, it may well be necessary to know the specifics of the contract between the private contractor and the agency to identify the custodian of the records, but that is not at issue here given the allegations of the complaint, which assert that Antonakakis is a custodian of public records within the meaning of the Open Records Act.

In this case, the Court of Appeals concluded — and the parties concede — that Georgia Tech has a designated open records officer upon whom written open records requests to Georgia Tech should be made for that agency. But the Court of Appeals concluded that, because "Georgia Tech has a designated Open Records officer to whom requests must be sent," Milliron's request for public records could only be served upon that officer. *Milliron*, 369 Ga. App. at 125 (1). Given our conclusion that a request for public records can be submitted to the custodian of those records — including, where appropriate, a private contractor who performs services for an agency — the Court of Appeals erred in reaching that conclusion. Additionally, because questions remain to be determined regarding what records may be in Antonakakis's possession, whether those are "public records" subject to the Open Records Act, and whether Antonakakis is a custodian of public records in this case in his capacity as a private contractor, a remand is required for the trial court to make those determinations.

Therefore, we reverse the judgment of the Court of Appeals affirming the trial court's dismissal of Milliron's complaint and remand the case to the Court of Appeals with direction to remand the case to the trial court to conduct further proceedings consistent with this opinion.

*Judgment reversed in part and case remanded with direction. All the Justices concur.*

Decided August 13, 2024.

Certiorari to the Court of Appeals of Georgia — 369 Ga. App. 121.

*Cross Kincaid, Anna G. Cross, Meredith C. Kincaid; Poole Huffman, Lucas W. Andrews*, for appellant.

*Venable, LLP, Theodore B. Randles, Mark E. Schamel*, for appellee.

*Caplan Cobb, Sarah Brewerton-Palmer, Katherine W. Gamsey; Canfield Law, Peter C. Canfield*, amici curiae.