**FIRST DIVISION
BARNES, P. J.,
MARKLE and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**March 27, 2026**

# In the Court of Appeals of Georgia

A26A0184. PRIDEMORE v. ENERGY AND POLICY INSTITUTE.

A26A0185. GEORGIA PUBLIC SERVICE COMMISSION et al. v. ENERGY AND POLICY INSTITUTE.

BARNES, Presiding Judge.

These companion appeals arise out of several Open Records Act ("ORA") requests that the Energy and Policy Institute ("EPI") submitted to the Georgia Public Service Commission ("PSC") seeking certain emails sent from or received by PSC Commissioner Tricia Pridemore, including emails stored in her two personal email accounts that EPI asserted were public records. After the PSC responded that none of the emails stored in the personal email accounts related to Pridemore's work as a Commissioner, EPI filed the present action against the PSC and Pridemore in both her official and individual capacities. The PSC and Pridemore filed motions to dismiss the

complaint, which the trial court denied. The trial court granted the PSC and Pridemore certificates of immediate review, and they thereafter filed applications for discretionary appeal, which we granted. In Case No. A25A0184, Pridemore appeals in her individual capacity, arguing that EPI's complaint should have been dismissed for failure to state a claim upon which relief could be granted because the emails sought by EPI were not prepared, maintained, or received by her in the performance of her official duties and thus were not public records. In Case No. A25A0185, the PSC and Pridemore in her official capacity appeal, arguing that EPI's claims should have been dismissed on sovereign immunity grounds because the PSC is not the custodian of the requested emails. They further contend that the EPI's claim for injunctive relief is moot because EPI was afforded reasonable access to all responsive documents. For the reasons discussed below, we affirm the judgments in both appeals.

*Case No. A26A0184*

1. We begin with Pridemore's claim that the trial court should have dismissed EPI's complaint for failure to state a claim upon which relief could be granted.

Under OCGA § 9-11-12(b)(6),

[a] motion to dismiss for failure to state a claim upon which relief can be granted should not be sustained unless (1) the allegations of the

2

complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.

*Cardinale v. Keane*, 362 Ga. App. 644, 650 (869 SE2d 613) (2022). As we have emphasized, "the Civil Practice Act requires only that a complaint give the defendant fair notice of what the claim is and a general indication of the type of litigation involved; the discovery process bears the burden of filling in details." *Campbell v. Ailion*, 338 Ga. App. 382, 385 (790 SE2d 68) (2016) (citation modified). See OCGA § 9-11-8(a)(2)(A) (complaint should include "[a] short and plain statement of the claims showing that the pleader is entitled to relief"). "When considering a motion to dismiss for failure to state a claim, a trial court may consider the complaint, the answer, and any exhibits attached to and incorporated into the complaint and answer." *Mark A. Schneider Revocable Trust v. Hardy*, 362 Ga. App. 149, 150 (1) (867 SE2d 153) (2021). While our review of a trial court's ruling on a motion to dismiss is de novo, we construe the pleadings "in the light most favorable to the plaintiff" and treat "all well-pled allegations in the complaint as true." *Blau v. Ga. Dep't of Corr.*,

364 Ga. App. 1, 2 (873 SE2d 464) (2022) (quotation marks omitted). "Ultimately, any doubts regarding the complaint must be construed in favor of the plaintiff." *McLeod v. Costco Wholesale Corp.*, 369 Ga. App. 717, 718 (894 SE2d 442) (2023) (quotation marks omitted).

So viewed, the complaint and exhibits attached thereto show that Pridemore is a Commissioner of the PSC, which regulates electric, natural gas, and telecommunications companies in Georgia and has the exclusive power to determine rates for those utilities. See OCGA § 46-2-1 et seq. Pridemore also serves as the President of the National Association of Regulatory Utility Commissioners ("NARUC"), which "represent[s] the state public service commissions who regulate the utilities that provide essential services" and is comprised of five regional associations. One of the regional associations, the Southeastern Association of Regulatory Utility Commissioners ("SEARUC"), includes utility commissioners from states across the southeast, including Georgia. Only utility commissioners can be members of NARUC and SEARUC.

EPI is a non-profit corporation that describes itself as a "watchdog group" and "uses research to inform the public, the media, and policymakers on energy and utility

issues." Daniel Tait serves as the Research and Communication Director for EPI and submits ORA requests on its behalf.

Both Pridemore and Tait attended SEARUC's annual conference in North Carolina in June 2024. While at the conference, Tait observed Pridemore repeatedly use her cell phone to send and receive text messages during the event programming. Another conference attendee observed Pridemore read a proposed resolution from her cell phone during a conference session that was then considered by SEARUC.

Based on these observations, Tait submitted an ORA request on behalf of the EPI to the PSC in June 2024. The request sought text messages sent and received from Pridemore's cell phone during the SEARUC conference, as well as a copy of the resolution that she read from her phone. The PSC responded by providing some records, but the production did not include all of the expected text messages or the resolution read by Pridemore. After receiving the records, Tait asked the PSC to conduct a second search, explaining that he personally witnessed Pridemore sending and receiving multiple text messages at the SEARUC conference and that Pridemore had been observed reading a resolution from her phone. The PSC responded that there were no additional responsive records.

Tait sought to clarify with the PSC whether there were ever any responsive text messages on Pridemore's phone or whether they were no long available and noted that he still had not received a copy of the resolution. The PSC responded that there were no additional public records available, cited to the definition of a "public record" under the ORA, and requested additional information about the resolution at issue. Tait then provided the date and time that the resolution was read at the SEARUC conference and asked if a public records officer had personally conducted a search of Pridemore's devices or whether Pridemore had attested that no responsive records existed. The PSC responded that Pridemore "stated the response is accurate as it was sent and that she did not read a resolution at the meeting."

After receiving these responses from the PSC, EPI obtained records from the Alabama Public Service Commission reflecting that Pridemore had used a personal email address to communicate with an Alabama Commissioner about a PSC resolution during the same time period as the SEARUC conference. EPI also obtained records from the North Dakota Public Service Commission reflecting that Pridemore had used a second personal email address in an email thread between commissioners of utility boards in multiple states. All of the other commissioners on the email thread used

6

their official email addresses, and the thread included communications about NARUC. After obtaining these records, Tait submitted new ORA requests on behalf of EPI to the PSC in an effort to obtain PSC-related email messages stored in Pridemore's two personal email accounts. It is those emails, discussed below, which are the subject of these appeals.

In August and September 2024, Tait submitted ORA requests seeking a copy of all email messages relating to the business of the PSC and containing certain key words that were sent from or received by the first of Pridemore's personal email accounts. As to both requests, the PSC responded, "Commissioner Pridemore has stated she does not retain any messages related to the Commission on that email address and she requests that any communication be sent to her official email address."

Tait filed another ORA request on behalf of EPI with the PSC in October 2024. The request sought emails relating to PSC business and containing certain key words that were sent from or received by Pridemore's second personal email account from 2024 up to the date of the request. The PSC responded that "Commissioner

Pridemore has reviewed the referenced email address . . . for the requested terms and date range and has found no records pertaining to this request."

In December 2024, EPI filed the present action, asserting claims against the PSC and Pridemore in both her official and individual capacities. The complaint alleged that the PSC and Pridemore violated the ORA, OCGA § 50-18-70 et seq., by failing to produce the requested emails stored on Pridemore's two personal email accounts, which the EPI asserted were "public records." The complaint sought an injunction requiring a search of Pridemore's email accounts and production of the responsive emails, civil fines against Pridemore in her individual capacity, and an award of attorney fees and expenses.

The PSC and Pridemore, in both her official and individual capacities, filed motions to dismiss. Following a hearing, the trial court denied the motions, concluding that the allegations in EPI's complaint were sufficient to state a claim for violations of the ORA and for civil fines and an award of attorney fees and expenses. In so ruling, the trial court found that the PSC's sovereign immunity had been waived by the ORA; that EPI's complaint sufficiently pled that the requested emails were created as part of Pridemore's performance of her official duties as a PSC

Commissioner and thus constituted public records; and that the complaint sufficiently plead that the responsive emails were under the custody and control of the PSC. Additionally, the trial court found that Pridemore's assertion that she had found no responsive records in her personal email accounts was immaterial at the motion to dismiss stage, particularly in light of EPI's allegations in its complaint that it had received records from other jurisdictions reflecting that Pridemore used her personal email accounts for PSC business.

(a) Pridemore contends that EPI failed to state a claim under the ORA because the emails in her private email accounts were not prepared, maintained, or received by her in the performance of her official duties as a PSC Commissioner and thus were not "public records" under OCGA § 50-18-70(b)(2).

In enacting the ORA, OCGA § 50-18-70 et seq., the General Assembly found and declared that

> the strong public policy of this state is in favor of open government; that open government is essential to a free, open, and democratic society; and that public access to public records should be encouraged to foster confidence in government and so that the public can evaluate the expenditure of public funds and the efficient and proper functioning of its institutions.

OCGA § 50-18-70(a). The General Assembly further declared that "there is a strong presumption that public records should be made available for public inspection without delay," and that the ORA should "be broadly construed to allow the inspection of governmental records." Id.

In furtherance of these declarations, "the General Assembly established that, with a few exceptions, '[a]ll public records shall be open for personal inspection and copying,' OCGA § 50-18-71(a)." *Milliron v. Antonakakis*, 319 Ga. 616, 621(1) (905 SE2d 657) (2024). The first inquiry in a suit brought pursuant to the ORA is whether the requested records are "public records." *Bowers v. Shelton*, 265 Ga. 247, 249(2) (453 SE2d 741) (1995). A "public record" is defined as

> all documents, papers, letters, maps, books, tapes, photographs, computer based or generated information, data, data fields, or similar material prepared and maintained or received by an agency or by a private person or entity in the performance of a service or function for or on behalf of an agency or when such documents have been transferred to a private person or entity by an agency for storage or future governmental use.

OCGA § 50-18-70(b)(2).[1] Emails prepared, maintained, or received by Pridemore in the performance of her official duties as a PSC Commissioner would clearly fall within this broad statutory definition of "public record."

We begin our evaluation of EPI's complaint by reiterating that "[i]f, within the framework of the complaint, evidence *may* be introduced which will sustain a grant of the relief sought by the claimant, the complaint is sufficient and a motion to dismiss should be denied." *McLeod*, 369 Ga. App. at 718 (quotation marks omitted). The complaint included allegations that only public utility commissioners can be members of NARUC and SEARUC; that Pridemore's "status as a commissioner is the only reason she is a member of NARUC and SEARUC"; that Pridemore participated in those organizations as "part of her work for the PSC" and "was acting on behalf of the PSC" when she attended events or did work for those organizations; that Pridemore used her two personal email accounts "to conduct official business" for the PSC in her communications with other state commissioners; and that based on records that EPI had received from other states, Pridemore was using her personal email accounts for "communications related to her work for the PSC." These

---

[1] The definition of "agency" includes every state commission. See OCGA §§ 50-14-1(a)(1)(A), 50-18-70(b)(1).

11

allegations must be accepted as true at the motion to dismiss stage. See *Milliron*, 319 Ga. at 622(1) (explaining that at the motion-to-dismiss stage, the trial court was required to accept as true the allegation that in preparing and maintaining the records at issue, the defendant was performing services for the public university as a private contractor); *Davis v. Augusta Press*, 367 Ga. App. 893, 897(2) (889 SE2d 110) (2023) (whether defendant "was acting 'in the performance of a function for' or 'on behalf of' the office of the Mayor when generating the requested records" was a question of fact that could not be resolved at the current stage of the proceedings). Moreover, determining whether an individual or entity was acting for or on behalf of an agency generally "requires a fact-intensive inquiry." *Smith v. Northside Hosp.*, 302 Ga. 517, 531(3) (807 SE2d 909) (2017). See *Dooley v. Davidson*, 260 Ga. 577, 578(2)(b) (397 SE2d 922) (1990) (before deciding whether records were subject to disclosure under the ORA, each of the requested documents had to be reviewed to determine if it was prepared, maintained, or received as part of the operation of the agency). Accordingly, we cannot say, at this early stage of the proceedings, that EPI could not possibly introduce evidence within the framework of the complaint sufficient to show that the requested emails were prepared, maintained, or received by Pridemore in the

performance of her official duties as a PSC Commissioner and thus constituted "public records" within the meaning of OCGA § 50-18-70(b)(2). Pridemore's contrary "arguments are more appropriate for the summary-judgment stage than the motion-to-dismiss stage of the proceedings." *McLeod*, 369 Ga. App. at 725(4) (quotation marks omitted).

(b) In a related enumeration of error, Pridemore argues that because EPI failed to sufficiently plead that the requested emails were "public records" so as to support a claim that the ORA was violated when the emails were not produced, EPI's claims against her for civil fines and attorney fees under the ORA likewise must fail. But as discussed supra in Division 1(a), EPI sufficiently pled that the requested emails were "public records," and thus Pridemore has failed to show any ground for dismissing EPI's related claims for civil fines and attorney fees.

*Case No. A26A0185*

2. The PSC[2] argues that the trial court should have dismissed EPI's claims against it on sovereign immunity grounds because the PSC is not the custodian of emails stored in Pridemore's personal email accounts.

> We review de novo a trial court's grant [or denial] of a motion to dismiss on sovereign immunity grounds, bearing in mind that the party seeking to benefit from the waiver of sovereign immunity has the burden of proof to establish waiver. Because a motion to dismiss on sovereign immunity grounds is based upon the trial court's lack of subject matter jurisdiction, the trial court is entitled to make factual findings necessary to resolve the jurisdictional issue. Here, the trial court did not make any factual findings, and we therefore view the factual allegations in the complaint as true to determine whether the complaint shows with certainty that [EPI] would not be entitled to relief under any state of facts that could be proven in support of [its] claim.

*Cowart v. Ga. Dep't of Hum. Svcs.*, 340 Ga. App. 183, 183 (796 SE2d 903) (2017) (citation modified). See *Stillwell v. Topa Ins. Co.*, 363 Ga. App. 126, 127 (871 SE2d 8) (2022) (explaining that where a motion to dismiss for lack of subject matter

---

[2] Pridemore joins the PSC's appeal in A26A0185 in her official capacity. Because "a suit against a state officer in his or her official capacity amounts to a suit against the State itself," we will refer to the PSC and Pridemore in her official capacity collectively as the "PSC" in Divisions 2 and 3 of our opinion. *Gonzalez v. Miller*, 320 Ga. 170, 181(4) (907 SE2d 859) (2024) (citation modified).

jurisdiction raises a facial challenge to the plaintiff's claim, " the court accepts as true the allegations on the face of the complaint" and construes the complaint "in the light most favorable to the [plaintiff] with any doubts resolved in that party's favor" (quotation marks omitted)).

The doctrine of sovereign immunity bars a lawsuit against the State where the State has not consented, but sovereign immunity can be waived. *Gonzalez v. Miller*, 320 Ga. 170, 181-82(4) (907 SE2d 859) (2024).

> And in this case, the ORA waives a state agency's sovereign immunity by expressly providing that "any person, firm, corporation, or other entity" may bring an action in the superior court "against persons or agencies *having custody* of records open to the public under this article to enforce compliance with the provisions of this article." See OCGA § 50-18-73(a).

Id. at 182(4) (emphasis added).

At the time that EPI made its document requests and the trial court decided the motions to dismiss, the ORA did not define the word "custody" or "custodian."[3]

---

[3] The ORA was amended, effective May 14, 2025, to include a definition of "custodian" and to add new provisions regarding requests of records from a custodian. See OCGA §§ 50-18-70 (b)(1.1) (2025), OCGA § 50-18-71(a) (2025); Ga. L. 2025, p. 689, §§ 1-3. See infra footnote 4. However, we conclude that the amended version of the ORA does not apply to cases like the present one, where the claims arise

Rather, the ORA simply referred to "persons or agencies having custody of records," OCGA § 50-18-73(a), and provided that "[a] request made pursuant to this Article may be made to the custodian of a public record orally or in writing." OCGA § 50-18-71(b)(1)(B).[4] Interpreting that version of the ORA, we have held that the term

---

from ORA requests made before its enactment. "Generally speaking, the retroactive application of statutes has long been disfavored in the law, even if it is not always forbidden. For that reason, courts usually insist upon some clear indication in the statutory text that a statute is to be applied retroactively before so applying it." *Deal v. Coleman*, 294 Ga. 170, 174–75(1)(b) (751 SE2d 337) (2013) (citation modified). That "clear indication" does not appear in the 2025 amendments to the ORA or the implementing legislation, and thus we do not construe the amendments as having retroactive effect. See *Howard v. Coffee Regional Med. Ctr.*, 377 Ga. App. 742, 748(2) (922 SE2d 890) (2025). Compare *Deal*, 294 Ga. at 175(1)(b) (concluding that there was "clear indication" that the 2012 amendment to OCGA § 50-18-72(a)(47) of the ORA was to apply retroactively, where "the amendment that enacted paragraph 72(a)(47) . . . provides explicitly that '[the amendment] shall apply to any request for public records made prior to the effective date of this Act.'").

[4] Under the 2025 amendments to the ORA, "custodian" is now defined as "the agency that has charge, custody, care, and control over a public record or an employee of such agency who is designated as the custodian of such agency's records." OCGA § 50-18-70 (b)(1.1). See Ga. L. 2025, p. 689, § 1. Additionally, the 2025 amended version of OCGA § 50-18-71 (a) provides:

> (2)(A) All requests to inspect or copy public records under this article shall be made upon a custodian.
> (B) Upon receiving a request to inspect or copy public records under this article, a custodian shall comply with the requirements of this Code section, including, but not limited to, the requirement to retrieve public records prepared and maintained or received by a private person or private entity in the performance of a service or function for or on

"custody" refers to "persons who have some level of control and care over the records being sought." *Cardinale*, 362 Ga. App. at 651(3). See *Milliron*, 319 Ga. at 624(2) (quoting *Cardinale* and further noting that the term "'custodian' found in OCGA § 50-18-71(b)(1)(B) is expansive enough to include anyone with the requisite care and control of public records").

The PSC contends that because the emails that EPI seeks are stored in Pridemore's personal email accounts, the PSC cannot be considered the custodian of those records under the ORA. But, as discussed supra in Division 1(a), EPI's complaint sufficiently pled that Pridemore used her two personal email accounts to prepare, maintain, and receive emails in the performance of her official duties as a

---

behalf of an agency or transferred to a private person or private entity by an agency for storage or future governmental use; provided, however, that a custodian shall have no obligation to retrieve public records held by another agency or any other public entity. Such private persons or private entities shall be required to produce such public records to a custodian upon request from such custodian so long as such request is made within the period of time as prescribed by the statutory document retention guideline or a period of time as defined in an agreement between the private person or private entity and the agency, whichever comes later.

See Ga. L. 2025, p. 689, § 2. However, as noted supra in footnote 3, the 2025 amended version of the ORA does not apply here.

PSC Commissioner, and those emails would constitute public records. And under the longstanding Georgia law of agency, a principal is entitled to seek recovery of its property possessed by its agent. See *Sheriff v. Thompson*, 116 Ga. 436, 438-439(1) (42 SE 738) (1902) (explaining that "[t]he possession of the defendant as agent of the plaintiff was, in law, the possession of the principal," and the principal was entitled to "recover possession" from the agent). By analogy, the PSC is entitled to seek recovery of public records in the personal possession of its officers and employees, and thus the PSC would have some level of control over the emails at issue here if they were in fact prepared, maintained, or received by Pridemore while acting in her capacity as a PSC Commissioner. See *Smith*, 302 Ga. at 522(1) n.4 (describing agency-principal relationship as analogous to the relationship between a governmental agency and another party acting on its behalf). Furthermore, whether the PSC is a custodian under the ORA is a factual question that cannot be resolved based on the pleadings. See *Davis*, 367 Ga. App. at 898(2) (whether defendant had custody over the requested documents was a "question of fact"); *Cardinale*, 362 Ga. App. at 651–52(3) (allegations in complaint that the defendants were custodians was "sufficient to survive a motion to dismiss," as "we have generally treated such allegations as factual

18

assertions"). Reading the allegations of the complaint "under the lens applicable to this early stage of the litigation," we cannot say that the complaint discloses with certainty that the EPI would be unable to prove that the PSC exercised some control over Pridemore's emails and thus has "custody" of them under the ORA. *Cardinale*, 362 Ga. App. at 652(3).

4. The PSC also contends that the trial court should have dismissed the EPI's request for injunctive relief as moot because the PSC already requested that Pridemore provide any responsive emails stored in her personal email accounts, and Pridemore responded that she does not retain any emails related to the PSC in those accounts. It is true that "a custodian of public records complies with an ORA request when he grants reasonable access to the files in his custody." *Felker v. Lukemire*, 267 Ga. 296, 299(2) (477 SE2d 23) (1996). See *Spencer v. Cherokee County Sch. Dist.*, 375 Ga. App. 789, 795(2)(a) (916 SE2d 746) (2025). However, in its complaint, EPI alleged that Pridemore was in possession of responsive emails that were not provided to EPI and that EPI had received emails from other sources reflecting that Pridemore used her personal email accounts for official PSC business. These allegations in the complaint must be accepted as true at the motion-to-dismiss stage, *Blau*, 364 Ga. App.

19

at 2, and whether and to what extent the PSC provided EPI "reasonable access" to the requested records is a factual inquiry "more appropriate for the summary-judgment stage" following discovery. *McCleod*, 369 Ga. App. at 725(5) (quotation marks omitted). See generally *Stern's Gallery of Gifts v. Corp. Prop. Invs.*, 176 Ga. App. 586, 592(4) (337 SE2d 29) (1985) (noting that "questions of reasonableness and unreasonableness are most often questions of fact"). Accordingly, the PSC has failed to show that EPI's claim for injunctive relief should be dismissed as moot.

For the foregoing reasons, the trial court committed no error in denying the motions to dismiss filed by the PSC and Pridemore in her individual and official capacities. We therefore affirm the judgment in both appeals.

*Judgments affirmed. Markle and Hodges, JJ.,* concur.